IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

|  |  |
|---|---|
| JAGDISH SINGH,<br><br>       Petitioner,<br><br>  vs.<br><br>MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security; TODD BLANCHE, Acting Attorney General of the United States; DAREN MARGOLIN, Director of the Executive Office for Immigration Review; OMAHA IMMIGRATION COURT; TODD M. LYONS, Acting Director of Immigration and Customs Enforcement; DAVID EASTERWOOD, Immigration and Customs Enforcement; CORY WILLIAMS, Polk County Jail Administrator; and KEVIN SCHNEIDER, Polk County Sheriff,<br><br>       Respondents. | **4:26-cv-00142-SHL-HCA**<br><br><br>**ORDER GRANTING IN PART PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS** |

## I.    INTRODUCTION.

This case presents an unsettling—and yet increasingly common—situation. Petitioner entered the United States without legal status in September 2019. Between November 2019 and early February 2026, federal immigration officials interpreted relevant provisions of the Immigration and Nationality Act ("INA") as allowing him to remain out of custody and in the country, even giving him permission to work. On February 11, 2026, however, Petitioner was arrested by immigration officials for driving infractions and informed that he has been subject to mandatory detention under 8 U.S.C. § 1225(b)(2) since the moment he entered the United States.

Respondents contend that their treatment of Petitioner does not violate due process. The Court disagrees. The Due Process Clause does not permit the Government to whipsaw aliens like Petitioner by telling them for years that they can legally live and work in the community but then turning around and claiming they are subject to mandatory detention. The Court therefore GRANTS IN PART the Petition for Writ of Habeas Corpus and ORDERS that Petitioner be given an individualized bond hearing before an Immigration Judge to determine whether he has violated the terms of his release in a manner that warrants revocation. The Immigration Judge must decide

1

the issue of revocation or release on the merits and may not conclude that jurisdiction does not exist to release Petitioner.

## II.    FINDINGS OF FACT.

The relevant facts are largely undisputed. Petitioner is a citizen of India who has been present in the United States since entering without inspection in September 2019 in Arizona. (ECF 1, ¶¶ 1–2; ECF 5-1, ¶ 12.) On October 9, 2019, Petitioner was served with a Notice to Appear that charged him with being inadmissible under INA §§ 212(a)(7)(A)(i)(I) and (a)(6)(A)(i). (ECF 1-1, p. 1.) On November 15, 2019, he was released on $25,000 bond. (ECF 1, ¶ 4; ECF 5-1, ¶ 13.) In March 2021, Petitioner filed an I-589, Application for Asylum and for Withholding of Removal which remains pending. (ECF 1, ¶ 5; ECF 5-1, ¶ 15.) In June 2024, Petitioner applied for and was granted work authorization while his asylum application was pending. (ECF 1, ¶ 5; ECF 5-1, ¶ 19.) His work authorization is valid until May 15, 2029. (Id.)

On February 11, 2026, Petitioner was working as a commercial truck driver when he failed to stop at a weigh station on I-80 near Mitchellville, Iowa. (ECF 1, ¶ 6; ECF 5-1, ¶ 20.) The Iowa Department of Transportation ("IDOT") inspected his vehicle and ticketed him for "bypassing open scale, operating without proof of periodic inspection, truck plates being improperly displayed, and false report of driving record." (ECF 1, ¶ 6; ECF 5-1, ¶ 20.) ICE officers at the scene conducted an immigration check on Petitioner. (ECF 1, ¶ 6; ECF 5-1, ¶ 20.) An arrest warrant was issued for Petitioner, and he was taken into ICE custody. (ECF 1, ¶ 6; ECF 5-1, ¶ 20.) The parties disagree as to where Petitioner is held. Petitioner claims that he is detained in the Polk County Jail, while Respondents say he is in the Hardin County Jail. (ECF 1, ¶¶ 7, 10, 15; ECF 5-1, ¶ 22.) This factual dispute is not material, as the Court maintains jurisdiction either way. According to Respondents, he was scheduled to appear before an Immigration Judge on April 9, 2026. (ECF 5-1, ¶ 22.) Petitioner brings three claims against Respondents[1] all stemming from the Due Process Clause of the Fifth Amendment. (ECF 1.)

---

[1] Respondents move to dismiss all claims against the "Omaha Immigration Court" on the grounds of judicial immunity. (ECF 5, pp. 21–22.) The Court agrees that the Omaha Immigration Court is an improper respondent but disagrees with Respondents' asserted reasoning. Nonetheless, the Court will *sua sponte* dismiss the Omaha Immigration Court for failure to state a claim. *Mildfelt v. Cir. Ct. of Jackson Cnty.*, 827 F.2d 343, 345 (8th Cir. 1987) (allowing district courts to *sua sponte* dismiss parties not "amenable to suit" under the Eleventh Amendment).

### III.   HABEAS CORPUS STANDARDS.

Petitioner is entitled to writ of habeas corpus if, as relevant here, "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Th[e] right [of habeas corpus] extends to those persons challenging the lawfulness of immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citing *Demore v. Kim*, 538 U.S. 510, 517 (2003) and *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001)). Petitioner bears the burden of proving by a preponderance of the evidence that his detention is unlawful. *See Walker v. Johnston*, 312 U.S. 275, 286–87 (1941); *see also Bradin v. U.S. Prob. & Pretrial Servs.*, No. 22-3032, 2022 WL 1154622, at *3 (D. Kan. Apr. 19, 2022) (collecting cases).

### IV.   LEGAL ANALYSIS.

*A. The Court Has Jurisdiction.*

Respondents argue that 8 U.S.C. § 1252(e)(3)(A) strips this Court of jurisdiction to hear the Petitioner's claim. The Court disagrees. Section 1252(e)(3)(A) states:

> Judicial review of determinations under section 1225(b) of this title and its implementation is available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of—
>
> (i)    whether such section, or any regulation issued to implement such section, is constitutional; or
>
> (ii)   whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law.

According to Respondents, this provision channels any challenge to the constitutionality of detention under § 1225(b)(2) to the United States District Court for the District of Columbia. (ECF 5, p. 6.) The Court disagrees. Rather than challenging "the validity of the system" in a wholesale fashion, Petitioner is bringing an as-applied due process challenge based on his particular circumstances. *See* § 1252(e)(3). "[M]any courts outside of the District of Columbia have held that such claims are not barred by § 1252(e)(3)." *Barros v. Noem*, No. 25-cv-488, 2025 WL 3154059, at *2 (W.D. Tex. Nov. 10, 2025) (collecting cases); *Zafra v. Noem*, 25-cv-00541, 2025 WL 3239526, at *2 (W.D. Tex. Nov. 20, 2025) ("Constitutional as applied challenges to an individual's detention during said removal process, however, are left to the regional federal

3

courts."). This is, in part, because the Supreme Court recently held that claims by immigration detainees addressing the validity of their confinement "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (cleaned up). And "core habeas petitions, jurisdiction lies in only one district: the district of confinement." *Id.* (cleaned up). In context, it is hard to imagine Congress intended to overwhelm the District of Columbia with individual habeas petitioners; instead, the appropriate path forward is for such claims to continue to be heard in the district of confinement. *See Barros*, 2025 WL 3154059, at *2–3. The Court therefore has jurisdiction over Petitioner's claims.[2]

       B.  *The Court Would Prefer to Hold that Sections 1225(b)(2) and 1226(a) Are Not Mutually Exclusive as a Matter of Statutory Interpretation, but Existing Supreme Court Precedent Appears to Preclude the Court from Doing So.*

       1.  <u>Statutory Background.</u>

Turning to the merits, this case implicates several provisions of the INA, starting with §§ 1225 and 1226. Section 1225(b)(2) states: "Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." By contrast, Section 1226(a) states:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>
> > (1) may continue to detain the arrested alien; and
> >
> > (2) may release the alien on—
> >
> > > (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> > >
> > > (B) conditional parole; but
> >
> > (3) may not provide the alien with work authorization (including an 'employment authorized' endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

---

[2] Holding otherwise would have ironic consequences, not the least of which is that it would mean the Eighth Circuit should not have decided the case on which Respondents place heavy reliance. *See Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026) (holding that petitioner was subject to mandatory detention under § 1225(b)).

This case—like thousands of others across the country—emanates from the Trump Administration's decision to begin relying on § 1225(b)(2) as a basis for seeking mandatory detention of illegal aliens pending the completion of removal proceedings even though past administrations of both parties (including the first Trump Administration) spent dozens of years treating aliens as being entitled to bond hearings pursuant to § 1226(a).

For the most part, when habeas petitions have been filed in these cases, district courts have operated from the premise that §§ 1225(b)(2) and 1226(a) are mutually exclusive. Which is to say, these courts have presumed that an illegal alien is either subject to mandatory detention under § 1225(b)(2) or entitled to a bond hearing under § 1226(a), but not both. This Court itself has operated from that premise, albeit with considerable hesitation.

2.  The Eighth Circuit's Recent Decision in *Avila v. Bondi*.

In *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), the Eighth Circuit resolved one part of the interpretive quandary that has been facing courts in immigration-related habeas cases: whether an alien who enters the country undetected but is later "arrested in the interior" (instead of at the border) is an "applicant for admission" for purposes of § 1225(b)(2). *Id.* at 1136. After reviewing the statutory language, the Eighth Circuit answered the question in the affirmative. *See id.* at 1138. Respondents argue that *Avila* spells the end for Petitioner and makes him subject to mandatory detention for the duration of his removal proceeding. (ECF 5, pp. 8–12.)

*Avila* is distinguishable because it involved the narrow issue of whether an alien who entered the United States in 2016 without encountering immigration officials is subject to mandatory detention under § 1225(b)(2) upon being arrested nine years later. *See Avila*, 170 F.4th at 1132. Here, by contrast, Petitioner encountered immigration officials shortly after entering the United States and was released (apparently pursuant to § 1226(a), although the record is unclear on this point) and later granted work authorization that remains valid to this day. Petitioner is therefore situated very differently than the petitioner in *Avila*. It's one thing for the Executive Branch to try to apply § 1225(b)(2) to someone upon encountering him for the first time; it's something else to try to apply it to someone who spent six-plus years on release with the full knowledge and awareness of immigration officials. The latter scenario creates due process issues that are not present in the former.

On a related note, it does not appear that anyone in *Avila* argued that §§ 1225(b)(2) and 1226(a) are not mutually exclusive. Instead, both sides believed the petitioner had to be governed

by one or the other, but not both. This is presumably because of their interpretation of the Supreme Court's decision in *Jennings v. Rodriguez*, 583 U.S. 281 (2018). As will be explained below, *Jennings* addressed a very different issue under very different circumstances. It should be re-examined under the current state of affairs.

      3.   But for *Jennings*, the Court Would Hold that Sections 1225(b)(2) and 1226(a) Are Not Mutually Exclusive.

Respondents argue that if Petitioner is an "applicant for admission" for purposes of § 1225(b)(2), then he is per se not entitled to a bond hearing under § 1226(a) but rather is subject to mandatory detention until the end of his removal proceeding. In other words, Respondents presume that Congress created a parallel scheme in which immigration officials could proceed under § 1225(b)(2) (with detention being mandatory through the end of the proceeding) or § 1226(a) (with bond being permitted), but not both.

There is nothing in §§ 1225(b)(2) or 1226(a) stating that they are mutually exclusive of one another. To the contrary, in context, there are strong indications that Congress understood and expected that aliens subject to § 1225(b)(2) might also end up on bond or some other form of release under § 1226(a). *See Vargas Lopez v. Trump*, 802 F. Supp. 3d 1132, 1140 (D. Neb. 2025) (holding that the two are not mutually exclusive). For example, § 1225(b)(2)(A) states that an applicant for admission "shall be detained for a proceeding under section 1229a of this title." In turn, § 1229a and its corollary, 8 U.S.C. § 1229, contain provisions recognizing that aliens in removal proceedings often will not be in custody. These provisions include § 1229(a)(1)(F), which requires an alien to provide an address and telephone number "at which the alien may be contacted respecting proceedings under section 1229a of this title," as well requiring the alien to update this information if it changes. Similarly, § 1229a(b)(5) explains the consequences for an alien who fails to appear for a removal hearing. These provisions would make little sense if, as Respondents argue, Congress intended for virtually all aliens in the country without lawful status to be subject to mandatory detention.

Moreover, and more generally, it would be odd as a matter of statutory interpretation to conclude that Congress enacted two provisions of the INA side-by-side but silently intended for there to be no interplay between them. *See Torres v. Lynch*, 578 U.S. 452, 459 (2016) ("[W]e must, as usual, 'interpret the relevant words not in a vacuum, but with reference to the statutory context.'" (quoting *Abramski v. United States*, 573 U.S. 169, 179 (2014))). The more logical conclusion is

that "applicants for admission" under § 1225(b)(2) are entitled in some circumstances to bond hearings under § 1226(a).

This conclusion is reinforced by other statutory context, including the provisions of § 1225(b)(1) governing aliens who are placed in "expedited removal proceedings" upon being apprehended. These aliens are governed by § 1225(b)(1)(B)(iii), which includes a section entitled "Mandatory Detention" that states: "Any alien subject to the procedures under this clause shall be detained **pending a final determination** of credible fear of persecution and, if found not to have such a fear, until removed." *Id.* § 1225(b)(1)(B)(iii)(IV) (emphasis added). The inclusion of the words "pending a final determination" creates a noticeable contrast with detention for "applicants for admission" in non-expedited proceedings under § 1225(b)(2). There is no subsection of § 1225(b)(2) entitled "Mandatory Detention." Instead, the detention language is found in a subsection entitled "In general" and states that "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained **for a proceeding under section 1229a** of this title." *Id.* § 1225(b)(2)(A) (emphasis added). The fact that Congress made aliens in expedited removal proceedings subject to detention "pending a final determination" but aliens in non-expedited proceedings under § 1225(b)(2)(A) subject to detention "for a proceeding under section 1229a" is noteworthy. The language of the former subsection expressly says that detention is required for the entire duration of the proceeding. The language of the latter subsection does not. The best way to attach significance to Congress's choice of words is to conclude that "applicants for admission" under § 1225(b)(2)(A) are eligible for bond hearings pursuant to § 1226(a).

In other words, when § 1225(b)(2)(A) says "the alien shall be detained for a proceeding under section 1229a of this title," it simply means the alien must remain in custody until the removal proceeding is initiated, at which point the normal procedures associated with such a proceeding (including the bond hearing under § 1226(a)) are given effect. Under this interpretation, the broad definition of "applicants for admission" in § 1225(a)(1) can live in harmony with §§ 1226(a), 1229, and 1229a, all of which anticipate that many aliens will not be in custody during their removal proceedings. Which is to say, an alien can be both an "applicant for admission" and entitled to a bond hearing.

Not only is this interpretation consistent with the statutory text, it also explains why, until very recently, the longstanding practice was for aliens without legal status to have bond hearings

even when they arguably fit within the definition of "applicants for admission" under § 1225(a)(1). It's not that immigration officials were "choosing" § 1226(a) over § 1225(b) or ignoring the congressional directive for mandatory detention. Rather, it simply reflects the fact that the two statutes were meant to work in harmony. This interpretation also resolves Respondents' argument that immigration laws should not give more favorable treatment to aliens who avoided apprehension at the border than those who were immediately detained. It treats aliens in both categories the same.

In prior rulings, this Court felt constrained from interpreting §§ 1225(b)(2) and 1226(a) in the manner described above by the Supreme Court's decision in *Jennings*, which held, among other things, that "§§ 1225(b)(1) and (b)(2) mandate detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin." 583 U.S. at 302. When read in a vacuum, this sentence suggests that an alien subject to § 1225(b)(2) is never entitled to a bond hearing under § 1226(a). However, *Jennings* arose out of very different circumstances. There, the petitioner was a lawful permanent resident of the United States until being convicted of a drug offense and theft of a vehicle, which led immigration officials to initiate removal proceedings against him. *Id.* at 289–90. He was subject to mandatory detention during these proceedings pursuant to § 1226(c). *Id.* After losing his removal proceeding in the immigration courts, the petitioner sought review in the United States Court of Appeals for the Ninth Circuit. *Id.* at 290. In the meantime, he filed a habeas petition—which later became a class action—in the Central District of California alleging that he was entitled to a bond hearing to determine whether ongoing detention was warranted. *Id.* The Ninth Circuit affirmed the entry of injunctive relief requiring the petitioner and other similarly situated individuals to have individualized bond hearings every six months. *Id.* at 291–92. The Supreme Court reversed, concluding there was nothing in the language of § 1225(b)(1), § 1225(b)(2), or § 1226(c) that could be interpreted to "include an implicit 6–month time limit on the length of mandatory detention." *Id.* at 303–04.

Against this factual and procedural background, the conclusion in *Jennings* that "§§ 1225(b)(1) and (b)(2) mandate detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin," *id.* at 302, is arguably dicta. Or, more precisely, it simply means that an alien is not entitled to recurring bond hearings throughout the life of the removal proceeding, as opposed to meaning that such an alien is never entitled to a bond hearing in the first instance. In that regard, it is important to keep in mind separate

8

language from *Jennings* explaining that § 1226(a) "applies to aliens already present in the United States" and creates a "default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings. Section 1226(a) also permits the Attorney General to release those aliens on bond [except in enumerated circumstances]." *Id.* at 303. As *Avila* explained, this sentence does not mean that §§ 1225(b)(2)(A) and 1226 cannot apply to the same alien. 170 F.4th at 1136. The same is true for the conclusion about § 1225(b)(2) mandating detention "throughout the completion of applicable proceedings." *Jennings*, 583 U.S. at 302. It does not mean § 1226(a) cannot apply to the alien. *See Avila*, 170 F.4th at 1136.

If the Supreme Court (or Eighth Circuit) would clarify *Jennings* in this way, cases like this one would become far simpler because detention would be mandatory under § 1225(b)(2) only until removal proceedings begin, at which point § 1229, § 1229a, and § 1226(a) kick in and entitle an alien to a bond hearing in some circumstances. In other words, §§ 1225(b)(2) and 1226(a) would work in harmony, rather than being mutually exclusive. Alas, the Court cannot take it upon itself to "decide the continuing validity of a Supreme Court decision even if it appears suspect." *United States v. Coonce*, 932 F.3d 623, 641 (8th Cir. 2019). Accordingly, the Court will proceed to the due process issue.

### C. *Petitioner Is Entitled to a Bond Hearing on Due Process Grounds.*

#### 1. *Demore* and *Avila* Do Not Foreclose Petitioner's Due Process Challenge.

The Court will assume that under *Avila*, Petitioner is "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Petitioner argues that his detention nonetheless violates the Fifth Amendment's Due Process Clause because the government revoked his previously granted liberty without providing any pre-deprivation process. (ECF 1, pp. 5–30.) District courts in the Fifth and Eighth Circuits—the two circuits to have adopted Respondents' interpretation of § 1225(a)(1) and (b)(2)—have held that this "does not foreclose petitioners challenging their detention on due process grounds." *Bonilla Chicas v. Warden*, --- F. Supp. 3d ----, 2026 WL 539475, at *5 (S.D. Tex. Feb. 20, 2026) (collecting cases). This Court agrees. "While Petitioner's claim under the INA is controlled by [*Avila*'s] interpretation of the 8 U.S.C. § 1225(b)(2), his due process claim remains before the Court." *Id.*

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533

U.S. at 693. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore*, 538 U.S. at 523. "At the same time, however, [the Supreme Court] has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Id.* "[D]etainees are entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *J.G.G.*, 604 U.S. at 673 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)).

As a threshold matter, Respondents argue that mandatory detention under § 1225(b)(2) does not violate Petitioner's due process rights because he is entitled only to those rights that are provided to him under the statute. (ECF 5, p. 19.) In essence, they argue that because, in their view, § 1225(b)(2) does not provide for any individualized bond hearing or other additional process, the due process analysis ends quickly: "Congress can constitutionally require an alien's mandatory detention without affording him a bond hearing." (Id., p. 17 (citing *Demore*, 538 U.S. at 523 and *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024)).)

*Demore* and *Banyee* are distinguishable. In *Demore*, the Supreme Court rejected a due process challenge to 8 U.S.C. § 1226(c), which mandates detention for non-citizens convicted of certain crimes. *Demore* extensively discussed "the fact that Congress enacted § 1226(c) based on evidence of increasing criminal activity by criminal aliens, as well as high rates of recidivism and flight." *Barrera Leon v. Warden*, No. cv 4:26-1341, 2026 WL 905191, at *2 n.2 (S.D. Tex. Apr. 2, 2026) (citing *Demore*, 538 U.S. at 518–19). The detainee there was a "criminal alien" who was detained for "the limited period of his removal proceedings." *Demore*, 538 U.S. at 531. Similarly, in *Banyee*, the Eighth Circuit concluded that there was no due process violation when a removable "criminal alien" was detained for more than a year under § 1226(c). *Banyee*, 115 F.4th at 930–33. *Banyee* held that *Demore* had adopted a "bright-line rule" which foreclosed further due process analysis of § 1226(c) detention so long as deportation proceedings remained pending. *Id.*

Here, Petitioner is not a criminal alien who has been convicted of serious crimes. Instead, Petitioner was issued citations following minor traffic infractions. (ECF 5-1, ¶ 20.) The same was not true in *Demore* and *Banyee*, where the petitioners were subject to criminal detention because they committed one of the criminal offenses identified in § 1226(c). In those situations, the petitioners received "the full procedural protections our criminal justice system offers" before being detained pursuant to § 1226(c). *Demore*, 538 U.S. at 513.

Here, Petitioner has received no such procedural protection. Instead, Executive Branch officials simply changed their mind—and upended dozens of years of practice—by deciding that he has been subject to mandatory detention since the day he entered the United States. This Court will join the majority of other courts across the country that have concluded that a person has a viable due process claim when the Government abruptly changes the rules of the game in this manner. *See, e.g.*, *Bonilla Chicas*, 2026 WL 539475, at *8; *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1154 (D. Minn. 2025); *Barrera Leon*, 2026 WL 905191, at *2 (collecting cases). "A person's liberty is equally protected by the due process clause, even when the liberty itself is a creation of the State." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). The Court will proceed to the merits of Petitioner's as-applied challenge.

2.    The *Mathews* Factors Weigh in Favor of Petitioner's Due Process Claim.

To determine whether Petitioner's civil detention violates due process, the Court balances three factors set out in *Mathews*; they are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. "The essence of procedural due process is that a person risking a serious loss be given notice and an opportunity to be heard in a meaningful manner and at a meaningful time." *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 685 (W.D. Tex. 2025) (quotation omitted).

As to the first factor "[t]he interest in being free from physical detention" is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529–31 (2004). It therefore cannot seriously be disputed that Petitioner has a cognizable liberty interest in remaining out of custody. *See Lopez-Arvelo*, 801 F. Supp. 3d at 686; *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025) (collecting cases). This is particularly true when, as here, Petitioner is being confined in "conditions indistinguishable from criminal incarceration." *Maldonado*, 795 F. Supp. 3d at 1148 (quoting *Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025)).

Here, the fact that Petitioner was released by Respondents and allowed to remain on release for several years with valid work authorization makes his liberty interest even stronger. "A noncitizen who has lived for years in the interior of the United States and established connections

11

in the country acquires a protectible liberty interest." *Barrera Leon*, 2026 WL 905191, at *2. Indeed, the Supreme Court has recognized that "aliens who have established connections in this country have due process rights in deportation proceedings" that exceed those of aliens who are apprehended "at the threshold of initial entry." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020); *see also United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) (summarizing cases establishing that "aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country"). In that regard, Petitioner is "experiencing all the deprivations of incarceration, including loss of contact with friends and family, loss of income earning, . . . lack of privacy, and, most fundamentally, the lack of freedom of movement." *Günaydin*, 784 F. Supp. 3d at 1187. Moreover, Petitioner acquired this liberty interest before the Government changed the statutory landscape by deciding that he was subject to mandatory detention under § 1225(b)(2) after previously having allowed him to live and work in the community. It would be one thing if he had just crossed the border; it is very different when he spent six-plus years in the community under a different set of rules than the Respondents are now trying to apply. *See id.* at 1187; *Barrera Leon*, 2026 WL 905191, at *3; *Bonilla Chicas*, 2026 WL 539475, at *10. The first *Mathews* factor therefore weighs heavily in Petitioner's favor.

The <u>second</u> factor is "whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks." *Darvin M. v. Bondi*, --- F. Supp. 3d ----, No. 26-cv-0437, 2026 WL 184843, at *6 (D. Minn. Jan. 24, 2026) (quoting *Günaydin*, 784 F. Supp. 3d at 1187). Here, the risk of erroneous deprivation is severe because Respondents are proposing essentially *no procedure at all*. In their view, not only can they upend dozens of years of practice, but they can do so retroactively without giving Petitioner so much as an individualized hearing. This factor also weighs heavily in Petitioner's favor. *See id.*; *Bonilla Chicas*, 2026 WL 539475, at *11.

The <u>third</u> factor requires the Court to consider "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. Respondents' interest here is insubstantial. Beyond simple traffic infractions, there is no evidence that Petitioner has violated the law since being released or that he is a flight risk. To the contrary, the record shows that he is gainfully and legally employed. Thus, although "ensuring that persons subject to removal do not

commit crimes or evade law enforcement is a significant governmental interest," *Maldonado*, 795 F. Supp. 3d at 1153–54; *Günaydin*, 784 F. Supp. 3d at 1189–90, the interest is not substantially implicated here. The Government's interest in continuing to detain Petitioner is further diminished where, as here, the Petitioner has essentially no criminal record and has attended all of his immigration court hearings "factors that bear directly on flight risk and dangerousness." *Bonilla Chicas*, 2026 WL 539475, at *11. Thus, the third *Mathews* factor weighs in favor of Petitioner.

Because all three *Mathews* factors weigh in Petitioner's favor, the Court concludes that Respondents violated Petitioner's procedural due process rights when they abruptly changed the rules and arrested him despite the Government previously having allowed him to live and work in the United States. *See Bonilla Chicas*, 2026 WL 539475, at *11; *Barrera Leon*, 2026 WL 905191, at *5; *Lopez-Arvelo*, 801 F. Supp. 3d at 687 (collecting cases); *Muse v. Mullin*, No. 26-cv-4024, 2026 WL 1008532, at *4 (N.D. Iowa 2026). Respondents are likewise violating his procedural due process rights by keeping him in custody without any sort of individualized custody redetermination.

### 3. The Appropriate Remedy Is an Individualized Bond Hearing.

The only remaining question is the appropriate remedy. Petitioner requests immediate release from custody or, in the alternative, an individualized bond hearing before an Immigration Judge. The Court has the authority to do either one. *Demore*, 538 U.S. at 517 (recognizing that § 1226(e) "contains no explicit provision barring habeas review"); *Lopez-Arvelo*, 801 F. Supp. 3d at 687–88 (collecting cases of both release and bond hearing as possible relief).

If there was no evidence that Petitioner had violated the terms of his release, the Court would order immediate release. The mere fact of arrest would have violated his due process rights. Here, however, the record shows that Petitioner was arrested for "bypassing open scale, operating without proof of periodic inspection, truck plates being improperly displayed, and false report of driving record." (ECF 1, ¶ 6; ECF 5-1, ¶ 20.) Although unlikely, it is at least plausible that these offenses, if proven, would shed light on Petitioner's dangerousness or risk of flight. Thus, the better exercise of discretion is to allow an Immigration Judge to decide in the first instance whether Petitioner has violated the conditions of his release in such a way that makes detention appropriate. The Immigration Judge must, however, decide the issue on the merits.

## V.    CONCLUSION.

Based on the foregoing, IT IS ORDERED THAT:

1.    Petitioner's Petition for Writ of Habeas Corpus (ECF 1) is GRANTED in part. Within seven days, Respondents must provide Petitioner with an individualized bond hearing, at which the Government shall bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, Petitioner's detention. The Immigration Judge must decide the issue of bond or detention on the merits and may not conclude that jurisdiction to order bond does not exist.

2.    Within fourteen days, one or both Parties must file a notice confirm that Petitioner has been granted the individualized bond hearing required by this Order. The notice also should state the outcome of the hearing.

**IT IS SO ORDERED.**

Dated: April 20, 2026

_____
Stephen H. Locher
UNITED STATES DISTRICT JUDGE